IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TOBY MAURICE MARABLE, et al.        :

                                           :

   v.                                  :   Civil Action No. DKC 19-2809

                                           :

D.P.I. SPECIALTY FOODS MID
ATLANTIC, INC., et al.              :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract and tort case are the motions to dismiss filed by (1) defendants D.P.I. Specialty Foods Mid Atlantic, Inc. ("Specialty Foods") and Gerald Brown, (ECF No. 7), and (2) Defendant Warehouse Employees Union, Local 730 ("Local 730" or the "Union"), (ECF No. 9). For the following reasons, both motions will be granted.

**I.   Background[1]**

Plaintiffs Tony Marable, Dale Blue and Damien Russ were forklift operators at the Prince George's County, Maryland warehouse of Specialty Foods. The Plaintiffs were members of Local 730, with whom Specialty Foods has a collective bargaining agreement. As Plaintiffs readily admit in their complaint, the terms and conditions of the Plaintiffs' employment were set out in a collective bargaining agreement ("CBA") between the Union and

---

[1] Unless otherwise noted, all facts are drawn from Plaintiffs' complaint and construed in the light most favorable to Plaintiffs.

Specialty Foods.  Gerald Brown is the General Operations Manager for Specialty Foods.

On June 8, 2018, Specialty Foods began an investigation into whether Plaintiffs and several other forklift operators were "stealing time" by claiming they had worked hours which they had not actually worked.  Each Plaintiff met individually with a Human Resources manager on June 8, where he was informed of the charge of time theft.  Each Plaintiff denied the charges against him.  Nonetheless, on June 22, 2018, Mr. Brown called Plaintiffs into his office and fired them.  Later that day, Mr. Brown addressed the remaining Specialty Foods warehouse employees and informed them that Plaintiffs had been terminated for stealing time.

In attendance at both the June 8 and June 22 meetings was a union representative: Shop Steward Keith Meyer.  After the initial meeting, security escorted Plaintiffs off the premises, Brown told the Plaintiffs that if they had any questions, they should contact the union, and Mr. Meyer provided each Plaintiff with a form in order to file a union grievance.  Plaintiffs each took up the offer, and on June 29, 2018, the parties held a grievance hearing. On July 28, another grievance hearing was held before the Union executive board, and on August 20, the parties attended a meeting of the executive board.  On September 7, Union president Richard Johnson told Plaintiffs that they could get their jobs back if they would agree to forego backpay allegedly owed since the date

2

of their termination. On September 25, however, the Union informed Plaintiffs that the Union executive board would not be processing their grievance to the arbitration stage.

On August 20, 2019, Plaintiffs filed this lawsuit, bringing claims of breach of contract, intentional infliction of emotional distress, and respondeat superior.

Defendants removed the case on the basis of federal question jurisdiction, asserting that the state law claims were preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a). On September 27, 2019, Defendants Specialty Foods and Brown jointly filed a motion to dismiss, (ECF No. 7), and Defendant Local 730 did so separately, (ECF No. 9). Plaintiffs responded, (ECF Nos. 14, 15), and Defendants replied, (ECF Nos. 16, 17).

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather

3

than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] ... that the pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id*.

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P.8(c) and is not usually an appropriate ground for dismissal. *See Eniola v. Leasecomm Corp.*, 214 F.Supp.2d 520, 525 (D.Md. 2002); *Gray v. Metts*, 203 F.Supp.2d 426, 428 (D.Md. 2002). However, dismissal is proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston–Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996). See 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 714 (3d ed. 2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6).").

**III. Analysis**

    **A.   Breach of Contract/LMRA Claims against Defendants Specialty Foods and Brown**

Defendants Specialty Foods and Brown argue that Plaintiffs' breach of contract claims are untimely.  While the statute of limitations for a breach of contract claim under Maryland law is three years, Defendants argue that Plaintiffs' breach of contract claims are in fact preempted by Section 301 of the LMRA.

Defendants Brown and Specialty Foods argue that "when a plaintiff asserts a state law claim that relates to, or arises out of, the terms of a labor contract, that claim is preempted by federal law." (ECF No. 7-1, at 5) (citing *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 937 (4th Cir. 1991)).  Under this reading, Plaintiffs' breach of contract claims would be untimely because "[h]ybrid actions against both employer and union pursuant to Section 301 of the LMRA are subject to a six-month statute of limitations prescribed in Section 10(b) of the National Labor Case Relations Act, 29 U.S.C. § 160(b)."  (ECF No. 7-1, at 6-7).

Plaintiffs respond that "Section 301 does not displace entirely state law in the labor relations context," (ECF No. 14, at 9), and that their claims, in particular, are not preempted. As far as their breach of contract claims go, Plaintiffs do not advance this argument with much force.  In their response, Plaintiffs merely argue that "Section 301 of the LMRA does not preempt *all* contract claims," (*id*. at 11) (emphasis added), and then suggest that "Plaintiffs' claims, particularly the tort claims, do not require the Court to delve into the intricacies of the CBA," (*id*.).  Plaintiffs are correct as to the tort claims, but incorrect as to the breach of contract claims.

Plaintiffs note that "an independent employment contract's mere borrowing of one or more terms from a collective-bargaining agreement does not in itself bring that contract within the scope

6

of § 301 preemption[.]" (*Id.*) (citing *Marion v. Virginia Elec. & Power Co.*, 52 F.3d 86, 89 (4th Cir. 1995)). As Plaintiffs concede, though, this is not a case where the allegation involves the breach of an independent employment contract that has "merely borrowed" CBA terms: Plaintiffs themselves declare that "Defendant, D.P.I. . . . breached the collective bargaining agreement[.]" (ECF No. 14, at 1). This is enough to distinguish the present case from Plaintiffs' cited case, *Marion v. Virginia Elec. & Power Co.*, 52 F.3d 86, a case which *did* deal with an independent employment contract and not a CBA.

Plaintiffs' breach of contract claims against DPI turn directly on interpretation of the CBA – a labor contract. "Section 301 of the LMRA expresses a federal policy, mandated by Congress, that federal law be applied in addressing disputes arising out of labor contracts." *Clark v. Newport News Shipbuilding & Dry Dock Co.*, 937 F.2d 934, 937 (4th Cir. 1991); *see also McCormick v. AT&T Technologies, Inc.*, 934 F.2d 531, 534 (4th Cir. 1991) ("the preemptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'") Plaintiffs' breach of contract claims against DPI and Mr. Brown are preempted.

As these claims are preempted, so too are they time-barred. "[A] six-month statute of limitations applies to actions under the [LMRA] brought by an employee against his employer for breach of

7

a collective bargaining agreement." *Foy v. Giant Food, Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171–72 (1983)).  "This limitations period begins to run when the claimant discovers, or through the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." *Bruce v. Int'l Longshoremen's Ass'n*, 7 F.Supp.2d 609, 614 (D. Md. 1998), *aff'd sub nom. Bruce v. Int'l Longshoremen's Ass'n, AFL-CIO*, 182 F.3d 907 (4th Cir. 1999) (citing *McCreedy v. Local Union No. 971*, 809 F.2d 1232, 1236 (6th Cir. 1987)).  Plaintiffs "discovered" the acts constituting the "violation" on June 22, 2018: the date they were allegedly terminated in violation of the CBA.  They then had six months to file this complaint, but instead waited until September 2019 to do so.  Given the above, "the face of the complaint clearly reveals the existence of a meritorious affirmative defense[.]" *Brooks*, 85 F.3d at 181.  Accordingly, Plaintiffs' self-styled "breach of contract" claims against DPI and Mr. Brown – which are really LMRA claims – will be dismissed.

    **B.   Breach of Contract/LMRA Claims against Defendant Local 730**

Local 730 advances much the same argument as Defendants DPI and Mr. Brown:

> Plaintiffs' complaint is properly cast as a "hybrid claim" brought under Section 301 of the LMRA, see 29 U.S.C. § 185, because it simultaneously advances a claim against an

>employer for breach of a collective bargaining agreement and a claim against a labor organization alleging a breach of its duty of fair representation.

(ECF No. 9-1, at 7) (citing *DelCostello*, 462 U.S. at 165; *Cannon v. Kroger Co*, 832 F.2d 303, 305 (4th Cir. 1987)). Local 730 argues that these claims are preempted, and therefore time-barred. (*Id.*)

Plaintiffs do advance a legal argument against preemption and untimeliness with respect to Local 730: they argue that their breach of contract claim against Local 730 arises out of a "breach of the duty of fair representation." Such a claim, according to Plaintiffs, "arises under state law as a breach of contract claim." (ECF No. 15, at 11) (citing *Byrne v. Mass Transit Admin.*, 58 Md. App. 501, 508 (1984)). Plaintiffs' cited case, *Byrne*, does appear to support Plaintiffs' argument. As that case held, "[t]he duty of fair representation does not arise under the LMRA, but rather as a private cause of action under State law for breach of contract." *Byrne*, 58 Md. App. at 508. The *Byrne* court went on to hold that the plaintiff's duty of fair representation claim was, therefore, not preempted. *Id*.

At a glance then, it would appear that *Byrne* conflicts with the United States Supreme Court's holding in *DelCostello*. In that case, the Supreme Court held "that § 10(b) should be the applicable statute of limitations governing the suit, both against the employer *and against the union*." *DelCostello*, 462 U.S. at 155

9

(emphasis added).  Plaintiffs attempt to distinguish *DelCostello*, arguing that:

> the point of the application of the six-month limitation in *DelCostello* was not to circumscribe and limit the period for employees to sue employers and unions; it was rather intended to expand on the period and protect plaintiffs from the typically short state limitation periods that are associated with state arbitration limitations.

(ECF No. 15, at 8-9).  They further argue that *DelCostello* is inapplicable because "[t]he instant case does not involve a suit to challenge an arbitration decision," and that the rationale of *DelCostello* suggests it should be limited to such cases.  They conclude, therefore, that, *DelCostello* does not apply in a case where the alleged breach of duty involves a wrongful failure to pursue a grievance to arbitration.  (*Id*. at 9-10).  To the contrary, this court has already considered and rejected that exact argument:

> Defendants assert that the six-month statute of limitations applied by the Supreme Court in [*DelCostello*] is applicable in this case.  It is. . . . There is one difference between this case and *DelCostello*.  There, plaintiffs were attacking an arbitration award where the union allegedly breached its duty of fair representation even though it had pursued plaintiff's grievances through arbitration.  In this case, the union did not elect to invoke the arbitration procedure to deal with plaintiff's grievance.  This difference does not change the result, however.

*Tobin v. Grand Union Co.*, 617 F.Supp.19, 21 (D.Md. 1985).

The fact that *DelCostello* applies to this case, however, does not fully resolve the issue. There is still the conflicting state court holding of *Byrne*, which appears to afford Plaintiffs an avenue to advance their claims under state law. Plaintiffs bolster this argument against preemption by citing to *Stanley v. Am. Fed. of State and Mun. Emp. Local # 553*, 165 Md. App. 1, 15 (2005), which also treats a duty of fair representation claim as arising under state law.

Judge Blake recently – albeit in an unreported decision – had cause to consider these two cases and their effect on whether or not a Plaintiff can avoid LMRA preemption when advancing a duty of fair representation claim:

> The plaintiffs cite two Maryland state court cases in support of their argument that they can bring a state law DFR claim. *See Stanley v. Am. Fed. of State and Mun. Employees Local No. 553*, 165 Md. App. 1, 15 (2005); *Byrne v. Mass Transit Admin.*, 58 Md. App. 501, 508 (1984) ("The duty of fair representation does not arise under the LMRA, but rather as a private cause of action under State law for breach of contract."). As the union defendants point out, however, the cases cited by the plaintiffs both involved claims by public sector employees. *See Stanley*, 165 Md. App. at 5 (the plaintiff worked for the City of Cumberland); *Byrne*, 58 Md. App. at 507 (the MTA, the plaintiff's employer, "is an agency and instrumentality of the State of Maryland"). But because of the NLRA's definition of "employer," "neither the NLRA nor the LMRA covers public employees" of a State or a political subdivision, and those employees cannot "sue their unions under the NLRA for a breach of the duty of fair

11

> representation." *Adams v. Am. Fed. of State*, 167 F.Supp.3d 730, 741 (D.Md. 2016) (citations omitted); see *Byrne*, 58 Md. App. at 507 ("Since § 152(2) of the LMRA specifically excludes the State, and implicitly its agencies, from the purview of the Act, an action against MTA under claim of the authority of the LMRA will not lie."). Therefore, the DFR claims at issue in *Byrne* and *Stanley* could not be brought under the federal labor statutes, but those cases are distinguishable, as the plaintiffs here are private sector employees.
>
> Accordingly, the applicable statute of limitations for the plaintiffs' DFR claim is six months. As the Supreme Court held in *DelCostello v. International Brotherhood of Teamsters*, in a claim against an employer for breach of the CBA and against the union for breach of its duty of fair representation, the federal statute of limitations in § 10(b) of the National Labor Relations Act should govern both claims. 462 U.S. 151, 154–55 (1983). Section 10(b) provides for a six month statute of limitations. 29 U.S.C. § 160(b). Therefore, "[a] plaintiff has only six months after the cause of action arose to file a claim brought under § 301 of the LMRA against a union for breaching its duty of fair representation." *Ramey*, 580 F.Supp.2d at 48.

*Whorton v. Mack Trucks, Inc.*, No. CV CCB-19-413, 2019 WL 7049933, at *4 (D.Md. Dec. 23, 2019).

Judge Blake's reasoning in *Whorton* is persuasive – in large part because *Whorton* drew on multiple cases which upheld the wide scope of federal preemption under similar circumstances. *See Taylor v. Giant Food, Inc.*, 438 F.Supp.2d 576, 583 (D.Md. 2006) ("[F]air representation claims completely pre-empt state law ... even if a plaintiff characterizes his or her claims as state-law

12

claims") (and collecting cases, *id.* at 583-84); *Diggs v. Drivers, Chauffeurs & Helpers Local Union No. 639*, Civil No. PJM 11-2404, 2012 WL 3774163, at *2 (D.Md. Aug. 29, 2012) ("[I]t is well-established that claims that require interpretation of a collective bargaining agreement or implicate a union's duty of fair representation are preempted by federal law."); *Ngamby v. Hamburg*, Civil No. TDC-15-0931, 2015 WL 6674148, at *3 (D.Md. Oct. 29, 2015) ("As a union member, Ngamby's employment relationship with Greyhound was governed by a collective bargaining agreement, and her breach of contract claim is most fairly read as alleging a violation of the duty of fair representation under the collective bargaining agreement. Such a claim is completely preempted by federal labor law and thus was properly removed.") Plaintiffs are therefore subject to the six-month statute of limitations established in Section 10(b).

Plaintiffs argue in the alternative that if the 10(b) statute of limitations applies, it should be tolled:

> Although, Defendant Local 730 sent a letter to Plaintiffs on or September 25, 2018, in which the union stated that it would not arbitrate the wrongful termination of Plaintiffs, Defendant Local 730 stayed in contact with Plaintiffs and was still assisting Plaintiffs in obtaining other employment. Thus, it was clear to Plaintiffs that Local 730 did not clearly communicate to Plaintiffs that it had fully abandoned them and that the Local 730 would no longer represent the Plaintiffs' plight to the Defendant DPI after a waiting

13

>       period.  Under this circumstance, equitable
>       estoppel is appropriate.

(ECF No. 15, at 12-13) (citing *Stallcop v. Kaiser Foundation Hospitals*, 820 F.2d 1044 (9th Cir. 1987)).

While Plaintiffs cite to a decision of the United States Court of Appeals for the Ninth Circuit, under Fourth Circuit law, "[e]quitable tolling applies where the defendant has wrongfully deceived or misled the plaintiff in order to conceal the existence of a cause of action." *Mezu v. Dolan*, 75 F.App'x 910, 912 (4th Cir. 2003) (quoting *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987)). Under this standard, Plaintiffs "must show the [Union] attempted to mislead [Plaintiffs] and that [Plaintiffs] reasonably relied on the misrepresentation by neglecting to file a timely [complaint.]" *Id*. Local 730's efforts to assist Plaintiffs in obtaining employment simply cannot be construed as an attempt to mislead them. There is nothing in Plaintiffs' complaint to suggest that Local 730 either stated or implied to Plaintiffs that they might arbitrate Plaintiffs' grievance "after a waiting period." Indeed, the complaint does not mention any Union conduct after the September 25 letter – much less any conduct designed to mislead Plaintiffs into sitting on their claims. As such, the complaint does not contain facts indicating that the statute of limitations should be tolled, and Plaintiffs' duty of fair representation claims will be dismissed.

14

Nor do the additional facts suggested in their response to the motion indicate that any amendment would sufficiently state facts to place the matter in dispute.

### C. Intentional Infliction of Emotional Distress

In addition to their breach of contract/LMRA claims against all defendants, each Plaintiff brings a claim of intentional infliction of emotional distress ("IIED") against Mr. Brown. To bring an IIED claim successfully, a plaintiff must allege facts showing that (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe. *Arbabi v. Fred Meyers, Inc.*, 205 F.Supp.2d 462, 465-66 (D.Md. 2002)(citation omitted). "In Maryland, 'the tort of [IIED] is rarely viable.'" *Estate of Ellen Alcalde v. Deaton Specialty Hosp. Home, Inc.*, 133 F.Supp.2d 702, 712 (D.Md. 2001) (quoting *Farasat v. Paulikas*, 32 F.Supp.2d 244, 247 (D.Md. 1997)). Each element must be pled with specificity and "[i]t is not enough for a plaintiff merely to allege that they exist; he must set forth facts that, if true, would suffice to demonstrate that they exist." *Id*. "A complaint that fails to allege sufficient facts in support of each element must be dismissed." *Id*.

Plaintiffs each identify the same conduct as forming the basis of his IIED claim: "publicly accusing Plaintiffs of theft in front

15

of Plaintiff's peers and friends was intentional, reckless, and in deliberate disregard of a high [sic] of probability that emotional distress would result to Plaintiff." (ECF No. 2, ¶¶ 124, 131, 138). Plaintiffs place a great deal of emphasis on the context of the alleged conduct that for the basis of their IIED claims:

> if some random person had accused Plaintiffs of theft in front of the entire staff of DPI, this may not rise to the level of extreme and outrageous conduct. But when the General Manager of the company, Defendant Brown, calls a meeting of the staff and employees to announce to all that a particular person is a thief and has been fired for time theft, this conduct, if the stated allegation is false, does pass the test of extreme, outrageous conduct that cannot be tolerated in a civilized society.

(ECF No. 14, at 13). While it is true that context – including the relationship of the parties – can be important, *see, e.g.*, *Figueiredo-Torres v. Nickel*, 321 Md. 642 (1990), the conduct at issue here is not even colorable as "extreme" or "outrageous." "For conduct to meet the test of 'outrageousness,' it must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Batson v. Shiflett*, 325 Md. 684, 733 (1992) (citing *Harris v. Jones*, 281 Md. 560, 566 (1977)). The alleged conduct of Defendants does not come close to meeting this standard. Plaintiffs' IIED claims will be dismissed.

16

### D. Respondeat Superior

Finally, Plaintiffs style separate claims under the heading "respondeat superior" claiming that Specialty Foods is liable for Mr. Brown's conduct – the same conduct which forms the basis of their IIED claim. (ECF No. 2, ¶¶ 136-155). Again, this conduct was not tortious. These claims will be dismissed as well.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge
